## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| JOHN CHRISTMAS | : | |
| 6212 Foxcroft Road | : | |
| Alexandria, VA 22307 | : | |
| Plaintiff | : | |
| v. | : | |
|  | : | |
| NORTH AMERICAN TOWER CORPORATION | : | |
| 405 Lexington Avenue, Suite 2600 | : | |
| New York, NY 10174 | : | |
|  | : | Civil Action No. 22-6630 |
| and | : | |
|  | : | |
| MICHAEL HOLODAY | : | |
| c/o North American Tower Corporation | : | |
| 405 Lexington Avenue, Suite 2600 | : | |
| New York, NY 10174 | : | |
| Defendants | : | |

## COMPLAINT

AND NOW, Plaintiff brings this action for relief from breach of contract, unjust enrichment, *quantum meruit*, fraud, and other related claims regarding Plaintiff's work services and/or employment for Defendant North American Tower Corporation ("NATC") and its principal, Defendant Michael Holoday, and alleges and avers in support thereof:

### Parties

1. Plaintiff is an adult male individual and the President of Current Energy Capital, LLC and has a registered office and/or place of business at the above captioned address. Plaintiff specializes in boutique development and infrastructure financing for large fiber broadband, telecom, and energy projects.

2. Defendant North American Tower Corporation ("NATC") is an entity and/or organization duly existing under the laws of the State of New York, with offices in New York and Toronto, Canada.

3. Defendant Michael Holoday is an adult male individual, serves as President and CEO of Defendant NATC, and at all times relevant had authority to make binding decisions for and on behalf of Defendant NATC.

4. At all times relevant, Defendant NATC agreed, accepted, adopted, acquiesced, and/or otherwise is/was bound by the actions, omissions, and conduct of its owners, officers, managers, supervisors, employees, and agents including, but not limited to, Defendant Holoday.

**Jurisdiction and Venue**

5. This Court has subject matter jurisdiction over this matter under diversity of citizenship, 28 U.S.C. §1332, as the parties are citizens of different states and the amount in controversy exceeds $75,000.

6. Venue is appropriate before this Court as Defendants reside and/or conduct business in New York, and/or all actions and omissions giving rise to this litigation occurred in New York.

**Chronology of Facts**

7. Plaintiff and Defendant Holoday met on a completely business and professional basis *vis-à-vis* their work for their respective companies.

8. On information and belief, Defendants were and had been trying to obtain large fiber broadband, telecom, and energy projects but had been unsuccessful, especially with finding financing.

9. Defendants discussed with Plaintiff his abilities to find financing for such projects.

10.     On or about January 29, 2020 the parties entered into an "Employment Offer terms and conditions" contract entirely drafted by Defendant Holoday (hereinafter "contract"), in which Plaintiff was to be employed as Vice President, Finance for Defendant NATC and earn a salary with benefits, commissions, and bonuses in exchange for his work, work services, and/or assisting Defendants in obtaining financing for Defendant NATC projects.  See Exhibit ("Ex.") A.

11.     The contract states that Plaintiff's regular full-time position for Defendant NATC is effective "the closing date of NATC's Private Equity Financing, Acquisition Transaction with the Government of Alberta, Verizon Wireless RFP Award for Tower Development Services, or Carrier SLA Engagement for a Green Tower Program."  See Ex. A.

12.     The contract provides Plaintiff a base salary of $180,000 (paid semi-monthly) and eligibility for benefits, medical and dental coverage, 401K, and other amenities.  See Ex. A.

13.     The contract further provided a "signing bonus of $50,000 in recognition of work performed to date" and "quarterly cash performance bonuses" to be paid out in March, June, September and December of each year.  See Ex. A.

14.     The contract describes Plaintiff's job responsibilities in relevant part, as follows:

Product development - Collaborate with bankers and Institutional Investors to develop structured financing and related risk management approaches for NATC's Finance program.  This will likely involve asset financing approaches including securitizations, permanent capital vehicles, funding vehicles, repo/covered finance structures, ring-fenced structures, and hedges related to all of these approaches as well as to the underlying assets.

Model development – Work with banking teams and their clients to develop Excel financial models in support of transaction execution, rating agency dialogue and investor dialogue.  Make sure that such models are subjected to appropriate security & quality control procedures including internal review and external comfort where warranted.  Educate team members in model use and leverage their effort in using models.

Applied research – Work with the NATC Finance Group and leadership to identify areas of research that are critical to produce development, risk measurement within

transactions, or investor education.  Lead research project, production of results and consequent interaction.

Client interaction – communicate well with banking team, rating agencies and clients on the products, models and research being developed.

See Ex. A.

15.     The contract requires Plaintiff, upon signing the contract, to be "bound to observe, at all times, the company's Code of Ethics and Business Conduct and the Information Systems and Information Technology (IS-IT) Policy", which are set forth in the contract.  See Ex. A.

16.     Attached to the contract as Exhibit 1 is the Bonus Plan, which sets forth expected commission percentages and discusses the sales incentive bonus plan, which is "tied to all other project financing deployed by [Defendant] NATC."  See Ex. A.

17.     Plaintiff signed the contract on January 29, 2020.  See Ex. A.

18.     Plaintiff worked in furtherance of the contract and agreements therein from January 29, 2020 to July 2022, working on various projects for Defendant NATC, including the few projects identified as triggering his employment as set forth in paragraph 11 above.

19.     At all times working in furtherance of Defendant NATC's business goals and objectives, Plaintiff represented himself as Defendant NATC's Vice President of Finance, Plaintiff abided by Defendant NATC's Code of Ethics and Business Conduct and Information Systems and Information Technology polices, and Plaintiff took directions from and at the behest of Defendant Holoday with regard to the work and services Plaintiff provided.

20.     Plaintiff was provided and utilized a Defendant NATC e-mail address (john.christmas@northamericantower.com); was provided and used Defendant NATC stationary; and, had a Defendant NATC signature block for e-mails that had Defendant NATC's business address and other information included.

21. At all times, Defendants were aware, accepting, and encouraging of Plaintiff's work services and Plaintiff representing himself as a Defendant NATC employee.

22. As time passed, Plaintiff and Defendants entered into five (5) Amendments to the original contract: March 10, 2020, March 24, 2020, June 5, 2020, April 12, 2021, and March 29, 2022; which changed and amended among other things the Plaintiff's commission structure, Plaintiff's bonus pay; and, what would trigger Plaintiff's employment.  See Ex. B.

23. The Fifth Amendment entered on March 29, 2022 made Plaintiff's employment "effective the closing date of NATC's first project that incorporates third-party-financing…" as oppose to the closing of the few projects identified originally in the contract as triggering employment, as those specific projects were not obtained by Defendant NATC.  See Ex. B.

24. Plaintiff was and has never been paid by Defendants any salary, commission, bonus, or other compensation or remunerations for his work services for Defendants.

25. On information and belief, Defendants had not closed any projects prior to Plaintiff's employment and/or services, and Defendants are now on the verge of closing at least two projects of which Plaintiff was material in finding and obtaining third party financing.

Kingston Project

26. One project Plaintiff worked for Defendant NATC and found third party financing was a Fiber-to-the-Home ("FTTH") project in Kingston, Ontario ("Kingston project").

27. Defendants informed Plaintiff that this was a large project and required significant attention and Plaintiff dedicated significant time and attention to the Kingston project.

28. Plaintiff courted dozens of potential investors for the Kingston project, including: Basalt Infrastructure Partners, Ridgewood Infrastructure, Goldman Sachs, Blackrock, KKR, Carlyle Group, Antin, Apollo, Owl Rock, AMP, Cross Timbers Capital, Searchlight Capital, GI

Partners, Sixth Street Partners, Macquarle, GTCR, Grain Management, Ridgemont Equity Partners, M/C Partners, Brookfield, Blackstone, Court Square, Oak Hill Capital, Tailwind Capital, EQT, Global Infrastructure Partners, Partners Group, Abry Partners, and Riverside Partners.

29.     In or around July 2021 Defendant NATC bid on the Kingston project and identified, at least Basalt Infrastructure Partners and Ridgewood Infrastructure as third party financiers.

30.     In the Fall of 2021, the Kingston project was mandated to Defendant NATC, which is a project estimated at around $300 Million dollars and projected fees to Defendant NATC in the tens of millions of dollars.  The Kingston project is expected to close before the end of 2022.

31.     Under the contract and amendments thereto, Plaintiff is entitled to 15% of the fees from the Kingston project.

32.     Plaintiff was a material and necessary part of Defendants successes, specifically with regard to finding thirty party financing for the Kingston project.

<u>Andorix Project</u>

33.     Plaintiff assisted from January of 2022 through July 2022 on the "Andorix project", which is a large fiber broadband project for Defendant NATC, which has an estimated closing value of $9,000,000.

34.     Plaintiff managed all aspects of the structuring, modeling, due diligence, and closing process and Plaintiff obtained the third-party financier, Voya, for the project.

35.     The Andorix project is set to close in August of 2022 and will be the first project, of which Plaintiff is aware, that has closed for Defendants.

36.     As Plaintiff obtained Voya, the third party financier, the Andorix project closing will trigger the contract and thus Plaintiff will get a $100,000 signing bonus as well as commissions and bonuses from the closing and fees to be generated.

37.     The Andorix project closing pays Defendant NATC $170,000, and the Andorix project, over a course of three years, is projected to pay Defendant NATC fees of $1,420,000.

38.     Plaintiff should receive another $68,000 from the Andorix closing and then over the life of the project and estimated payments to Defendant NATC, Plaintiff should reap around $668,000 in commission money and bonuses.

39.     Plaintiff was a material and necessary part of Defendants successes, specifically with regard to finding the third-party financier for the Andorix project.

<u>Breach, Termination, Rescind, and Separation of Services</u>

40.     In the Spring or early Summer of 2022, after the Kingston Project had been mandated to Defendant NATC and the Andorix Projects became more likely to close in August, Defendants began to dissociate from Plaintiff.

41.     Defendant Holoday claimed he had entered a Non-Disclosure Agreement regarding the Kingston project, and was therefore prohibited him from speaking with Plaintiff about the Kingston project, as Plaintiff was "not an employee."

42.     This was the first time Defendants had made any mention or dissociation with Plaintiff with regards to employment, since Plaintiff had begun providing services in January 2020.

43.     Then in June 2022, Defendant Holodays breached the contract by informing Plaintiff in an e-mail that he would not be employed by Defendant NATC.

44.     Defendant Holoday further e-mailed Plaintiff that Defendants would not pay him for the Kingston project, and that Defendants would pay Plaintiff a significantly reduced amount on the Andorix project, than is required by the contract and amendments.

45.     As a direct and proximate result of the foregoing, Plaintiff has been deprived employment, deprived salary, deprived bonuses, deprived commission pay, deprived health

insurance, deprived retirement plans, deprived other amenities of employment, and deprived other incentives, remunerations, and amenities that were contracted to- and promised.

46.      Defendants are seeking a windfall and unjust enrichment by having used Plaintiff's services for two-and-a-half years and are now seeking to keep the compensation and other consideration promised Plaintiff for his services.

47.      Alternatively, Defendants have acted intentionally and with malice, with an intent to defraud Plaintiff, and to reasonably induce Plaintiff to provide his work services and expertise, with no intention of fulfilling Defendants end of the bargain.

48.      Plaintiff has been harmed economically, professionally, and emotionally as a result of the foregoing.

## COUNT ONE
### Breach of Contract and/or Substantial Performance
### Plaintiff v. Defendants

49.      Plaintiff incorporates the foregoing paragraphs as if set forth at length herein.

50.      Plaintiff has substantially performed under the contract, and obtained the third party financing for projects that will trigger the payment provisions of the contract and amendments.

51.      Alternatively, the parties by and through their actions, omissions, and conduct, have already tacitly agreed, entered, and/or recognize that Plaintiff is employed and has assumed the position of Vice President, Finance since January of 2020.

52.      Defendants breached the contract and its amendments by refusing Plaintiff employment and/or having terminated Plaintiff's employment.

53.      Defendants breached the contract by having pre-emptively refusing and failing to uphold its end of the bargain with regard to full consideration under the contract and amendments.

54.      Defendants breach is unjustified and wrongful.

55.      Plaintiff substantially performed under the contract.

56.     As a direct result of Defendants' wrongful breach of contract, Plaintiff is entitled to employment, salary, bonus pay, commission pay, quarterly bonuses, health insurance, dental insurance, 401K plan, pension, savings accounts, and all other compensation and remunerations permitted under the contract, under the amendments, and under the law.

WHEREFORE, Plaintiff hereby demands judgment in his favor and against Defendant North American Tower Corporation, and Defendant Michael Holoday, for any and all damages deemed necessary and just by the Court.

## COUNT TWO
### Breach of the Covenant of Good Faith and Fair Dealing
### Plaintiff v. Defendants

57.     Plaintiff incorporates the foregoing paragraphs as if set forth at length herein.

58.     Every contract carries a covenant of good faith and fair dealing.

59.     The elements to a claim of breach of the covenant of good faith and fair dealing mirror the elements of a claim of negligence, requiring (i) defendant owes plaintiff a duty to act in good faith and conduct fair dealing, (ii) defendant must breach that duty, and (iii) the breach of duty must proximately cause plaintiff's damages.

60.     Here, Defendants violated and breached the covenant of good faith and fair dealing by having breached and/or rescinded the contract after Plaintiff substantially performed.

61.     Defendants failed and refused to employ Plaintiff as promised and have failed and refused to pay Plaintiff the consideration as promised.

62.     Plaintiff has upheld his end of the bargain, by having substantially performed under the contract and thus is entitled to all compensation and benefits afforded under the contract, amendments, and employment.

63.     As a direct result of Defendants' wrongful conduct, Plaintiff is entitled to employment, salary, bonus pay, commission pay, quarterly bonuses, health insurance, dental insurance, 401K plan, pension, savings accounts, and all other compensation and remunerations permitted under the contract, under the amendments, and under the law.

WHEREFORE, Plaintiff hereby demands judgment in his favor and against Defendant North American Tower Corporation, and Defendant Michael Holoday, for any and all damages deemed necessary and just by the Court.

### COUNT THREE
### *Quantum Meruit*
### Plaintiff v. Defendants

64.     Plaintiff incorporates the foregoing paragraphs as if set forth at length herein.

65.     As alleged supra, Plaintiff (i) performed services in good faith and at the behest of Defendants, (ii) Defendants accepted those services (iii) there was an expectation of compensation to be paid to Plaintiff for the services, and (iv) the reasonable value of those services is quantifiable.

66.     Here, Plaintiff performed services in good faith and at the behest of Defendants, Defendants accepted those services, Plaintiff had an expectation to be paid compensation as set forth in the contract and its amendments, and the value of the compensation is quantifiable *vis-à-vis* the closings of the foregoing projects and/or the employment contract entered.

67.     As such, Plaintiff is entitled to an award for *quantum meruit* for all harms, damages, and other loss he has sustained as alleged *supra*.

WHEREFORE, Plaintiff hereby demands judgment in his favor and against Defendant North American Tower Corporation, and Defendant Michael Holoday, for any and all damages deemed necessary and just by the Court.

## COUNT FOUR
### Constructive Trust / Unjust Enrichment
### Plaintiff v. Defendants

68.    Plaintiff incorporates the foregoing paragraphs as if set forth at length herein.

69.    The elements to a claim of constructive trust or unjust enrichment requires i) a confidential or fiduciary relationship between the parties, ii) a promise either express or implied, iii) reliance upon the promise, and iv) unjust enrichment caused by a breach of the promise.

70.    The contract and amendments between Plaintiff and Defendants created a constructive trust and/or a confidential and fiduciary relationship.

71.    Defendants promises expressly in the contract and amendments, as well as those implicit in the existence of the parties' relationship was reasonably relied upon by Plaintiff.

72.    Defendants have breached the promises Plaintiff reasonably relied upon.

73.    As a direct result of the foregoing, Defendants are unjustly enriched.

74.    As a direct result of Defendants' wrongful conduct, Plaintiff is entitled to employment, salary, bonus pay, commission pay, quarterly bonuses, health insurance, dental insurance, 401K plan, pension, savings accounts, and all other compensation and remunerations permitted under the contract, under the amendments, and under the law.


WHEREFORE, Plaintiff hereby demands judgment in his favor and against Defendant North American Tower Corporation, and Defendant Michael Holoday, for any and all damages deemed necessary and just by the Court.

11

**COUNT FIVE**
**Fraud, Misrepresentation, and Fraud in the Inducement**
**Plaintiff v. Defendants**

75.     Plaintiff incorporates the foregoing paragraphs as if set forth at length herein.

76.     A claim of fraud requires: (i) a material misrepresentation or omission of fact, (ii) made by a defendant with knowledge of its falsity, (ii) an intent to defraud, (iv) reasonable reliance on the party of the plaintiff, and (iv) resulting damage to the plaintiff.

77.     A claim for fraud-in-the-inducement has the same factors as a claim for fraud but the first element is extended to include not merely material misrepresentations or omissions of fact germane to the contract, but includes those collateral misrepresentations, which induces the plaintiff to enter into the contract.

78.     Here, Defendants committed fraud in offering and entering into the contract, knowing that Defendants would never honor the contract once financing was obtained and a project was about to close, by merely claiming Defendants would not hire the individual (i.e. Plaintiff).

79.     Defendants claims and representations to get Plaintiff to work and provide services free of charge or remunerations until a future date fraudulently induced Plaintiff to enter the contract.

80.     At all times, Defendants sought to defraud Plaintiff and at all times Plaintiff had reasonably relied upon the misrepresentations and inducements.

81.     As a direct result of Defendants' wrongful conduct, Plaintiff is entitled to employment, salary, bonus pay, commission pay, quarterly bonuses, health insurance, dental insurance, 401K plan, pension, savings accounts, and all other compensation and remunerations permitted under the contract, under the amendments, and under the law.

WHEREFORE, Plaintiff hereby demands judgment in his favor and against Defendant North American Tower Corporation, and Defendant Michael Holoday, for any and all damages deemed necessary and just by the Court.

DEREK SMITH LAW GROUP, PLLC

BY:    */s/ Daniel S. Kirschbaum*
       DANIEL S. KIRSCHBAUM, ESQ.
       One Penn Plaza, Suite 4905
       New York, NY 10119
       T: 332-910-5650
       E-mail: DSK@dereksmithlaw.com

BY:    */s/ Christopher J. DelGaizo*
       CHRISTOPHER J. DELGAIZO, ESQ.
       *Pro Hac Vice Pending*
       1835 Market Street, Suite 2950
       Philadelphia, PA 19103
       T: 215-391-4790
       E-mail: Chris@dereksmithlaw.com

       *Counsel for Plaintiff, John Christmas*

Date: August 4, 2022